UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION

| | |
|---|---|
| FRANKLIN LONG, JR., as an individual,<br><br>Plaintiff,<br><br>- against -<br><br>CITY OF PRINCETON, WEST VIRGINIA; TIM GRAY, in his individual and official capacities as Police Chief for the City of Princeton, West Virginia, Police Department; and KENNETH CLAY, in his individual and official capacities as City Clerk for the City of Princeton, West Virginia,<br><br>Defendants. | CASE NO.: 1:23-cv-00301<br><br>**PLAINTIFF'S VERIFIED COMPLAINT**<br><br>CIVIL RIGHTS ACTION 42 U.S.C. § 1983<br><br>DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES |

COMES NOW Plaintiff, FRANKLIN LONG, JR. ("Plaintiff" or "Long"), as an individual, by and through his counsel, and as his cause of action against Defendants herein, avers as follows:

**INTRODUCTION**

1.    Long brings this action seeking declaratory relief, injunctive relief, and nominal damages to redress deprivations by Defendants, CITY OF PRINCETON, WEST VIRGINIA ("Princeton" or "City"); TIM GRAY, in his individual and official capacities as Police Chief for the City of Princeton, West Virginia, Police Department ("Chief Gray"); and KENNETH CLAY, in his individual and official capacities as City Clerk for the City of Princeton, West Virginia, ("Clerk Clay") (collectively "Defendants").

2.    This is a civil rights action challenging the City's Codified Ordinances, policies, and practices, as well as the City's interpretation and application of the City's Codified Ordinances, and the City's policies, practices, and procedures in implementing and enforcing the City's Codified Ordinances, that create an unconstitutional prior restraint on Long's free speech

activities in public spaces in the City, including, but not limited to, Dick Copeland Town Square and Princeton City Park.

3.      Pursuant to 42 U.S.C. § 1983, Long seeks injunctive relief, declaratory relief, and nominal damages against Defendants.

4.      This action is premised on the United States Constitution concerning the deprivation of Long's fundamental rights to free expression, free exercise of religion, and due process.

5.      Defendants' actions have deprived and will continue to deprive Long of his fundamental rights as provided in the First and Fourteenth Amendments to the United States Constitution.

6.      Each and every act of Defendants alleged herein was committed by Defendants named herein, and each and every act was committed under the color of state law and authority.

7.      Long challenges the City's Codified Ordinances, § 771.12 (the "Code") as applied to Long's expression.

8.      Long challenges the City's procedures for granting permits for expressive activity, as exemplified by the City's Application for Parade or Assembly Permit ("Permit Application"), on their face and as applied to Long's expression.

9.      Long seeks declaratory and injunctive relief and nominal damages for violations of his constitutional rights based upon the City's Code and Permit Application, and any of the City's policies, practices, and procedures in implementing and enforcing the City's Code and Permit Application, every day since his expression has been stymied.

10.     Long seeks declaratory and injunctive relief and nominal damages for violations of his constitutional rights on June 26, 2022, when Chief Gray ordered him, under color of law, that

he could not, based upon the City's Code and Permit Application, and any of the City's policies, practices, and procedures in implementing and enforcing the City's Code and Permit Application, express his message without first obtaining a permit, and every day since his expression has been stymied.

11.     Long seeks declaratory and injunctive relief and nominal damages for violations of his constitutional rights on August 12, 2022, when Clerk Clay determined, under color of law, that he could not, based upon the City's Code and Permit Application, and any of the City's policies, practices, and procedures in implementing and enforcing the City's Code and Permit Application, express his message without first obtaining a permit, and every day since his expression has been stymied.

12.     Defendants enforced the Code and Permit Application against Long, and continue to enforce them based upon the policies, practices, and customs approved by the City, the Princeton Police Department, and the City's Clerk's office for interpreting, enforcing, and applying the Code and Permit Application.

## PARTIES

13.     Plaintiff Long resides in Tazewell County, Virginia, and brings this action in his personal capacity.

14.     Defendant City of Princeton, West Virginia, is a body politic and corporate located within the State of West Virginia and has the ability to sue and be sued. The City has the right, power, privilege, and authority to adopt and enforce the Code and Permit Application. The City is responsible for the training (or lack thereof) of the City's Chief of Police and City Clerk, and others who implement the Code and Permit Application. Defendant City has the right, power, privilege, and authority to train (or fail to properly train) its officers, agents, and employees to interpret,

3

enforce, and apply the City's Code and Permit Application and its own policies, customs and procedures, and to do and perform all of the acts pertaining to its local affairs. At all material times, the City was the employer of the City's police officers, including but not limited to Chief Gray, and the City's Clerk's office employees, including but not limited to Clerk Clay, acting to interpret, enforce, and apply the City's Code and Permit Application, and is responsible for the training (or lack thereof) of the police department and the City's Clerk's office employees.

15.    Defendant City of Princeton, West Virginia, knew of the unlawful enforcement of the City's Code and Permit Application alleged herein and had the power and authority to remedy the unlawful interpretation, enforcement, and application, but failed to do so. The City, by both its acts and failure to act, has ratified the unlawful interpretation, enforcement, and application of the Code and Permit Application.

16.    Defendant Chief Gray acts as the City's Chief of Police who enforces the City's Code and Permit Application, and was at all relevant times employed by the City. Chief Gray enforced the City's Code and Permit Application under color of state law and is sued in his official and individual capacity.

17.    Defendant Clerk Clay acts as the City's Clerk, who enforces the City's Code and Permit Application, and was at all relevant times employed by the City. Clerk Clay enforced the City's Code and Permit Application under color of state law and is sued in his official and individual capacity.

## JURISDICTION AND VENUE

18.    Long brings this action seeking declaratory and injunctive relief and nominal damages to redress deprivations by Defendants, acting under color of state law, of certain rights

secured to Long and others as alleged herein under the United States Constitution as brought pursuant to 42 U.S.C. § 1983.

19.    Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4), which provide for original jurisdiction in this Court of all suits brought pursuant to 42 U.S.C. § 1983.

20.    Jurisdiction is also conferred on this Court by 28 U.S.C. § 1331 because the cause of action arises under the Constitution and laws of the United States.

21.    This Court is authorized to grant Declaratory Judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, implemented through Rule 57 of the Federal Rules of Civil Procedure, and to issue the Preliminary and Permanent Injunctive relief requested by Long under Rule 65 of the Federal Rules of Civil Procedure.

22.    This Court is authorized to grant Long's prayer for relief and to award Long's costs in this action for violations of Long's constitutional and civil rights, including a reasonable attorneys' fee, pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1920, and Rule 54 of the Federal Rules of Civil Procedure.

23.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendants reside and/or do business in the Southern District of West Virginia and may be found and served in the Southern District of West Virginia.

24.    Venue is proper in the Southern District of West Virginia as all of the events giving rise to the claims herein occurred in this District.

## FACTS

### Long's Planned Activities

25.    Long is an evangelical Christian who frequently expresses his beliefs and convictions to others in public due to religious convictions.

26.    Long looks for opportunities to share his deeply-held religious beliefs with others in public places. Primarily, he wants to preach in open, public spaces to spread awareness of his views on religious, political, and social topics.

27.    Long engages in these activities as a tenet of his religion.

28.    Long does not participate in demonstrations.

29.    Long does not participate in protests.

30.    Long does not seek to draw a crowd with his expressive activity.

31.    Long does not solicit money or membership to join any organization.

32.    Long does not harass anyone or encourage violence.

33.    Long does not block passageways or hinder pedestrian access. He is always willing to allow people to pass by him while he is engaging in his religious expression.

34.    The focus of Long's message is that Jesus Christ came to die for sinners and that those who trust in Christ as their Savior will be saved.

35.    Long desires to express his religious beliefs in public spaces in the City of Princeton, including Dick Copeland Town Square and Princeton City Park.

36.    Public parks, public streets, public sidewalks, and public rights-of-way within the jurisdiction of the City of Princeton are traditional public fora.

37.    Dick Copeland Town Square and Princeton City Park are traditional public fora.

6

38.    Long, citizens, and members of the public utilize the public spaces for various activities, including communication and the exchange of ideas.

39.    Long desires to share his views with people in public spaces in the City, including Dick Copeland Town Square and Princeton City Park, because of the ability to reach a meaningful number of people in the area.

40.    In the upcoming days – including but not limited to select days from the date of this filing through December 2024 – Long has concrete plans to engage in his constitutionally-protected activities by peacefully expressing religious, political, and social speech within the City's public spaces, including Dick Copeland Town Square and Princeton City Park.

41.    If Long obtains reliefs in this cause, he intends to share his religious beliefs every weekend, as the weather permits, and some weekdays as his work schedule and weather permit, in the City's public spaces including, but not limited to, Dick Copeland Town Square and Princeton City Park.

42.    As a direct and proximate result of Defendants' prior enforcement of the Code and Permit Application, Long fears sanction for exercising his constitutional rights.

**Princeton's Code**

43.    The City adopted § 771.12 of the Code, entitled Permit Required (*See* attached Exhibit 1).

44.    Section 771.12 of the Code states:

All persons engaging in the business of conducting dances or furnishing other public amusement or entertainment conducted for private profit or gain shall obtain a permit therefor from the City Collector at least twenty-four hours in advance of the dance, amusement or entertainment, unless a permit therefor has been theretofore issued.

### Princeton's Application for Parade or Assembly Permit

45.     The City adopted the Application for Parade or Assembly Permit ("Permit Application") (*See* attached Exhibit 2).

46.     The Permit Application requires the following information: "Nature of Activity – Describe in Detail (e.g., picketing, public speech, debate, skit, demonstration, etc.)."

47.     The Permit Application provides: "Applications must be received 10 business days prior to the scheduled event."

### Defendants Enforce the Code and Permit Application Against Long

48.     On June 26, 2022, Long was peacefully sharing his religious message on a public street in the City.

49.     On this date, Chief Gray approached Long and told him he had to have a permit "due to City ordinances."

50.     When Long responded that, according to the Constitution, he did not need a permit, Chief Gray responded "I understand that, but in order for you to protest you must have a permit."

51.     Long responded that he was not protesting, but preaching, and reiterated that, according to the Constitution, he did not need a permit.

52.     Chief Gray again told Long he had to first obtain a permit, and told him to come to his office, and he would get him a permit.

53.     When Long again referenced his Constitutional rights, Chief Gray responded: "I do understand that but the City Ordinance says you must have a permit."

54.     Chief Gray asked Long to leave.

55.     Long complied, and left.

56.     Chief Gray's restriction on Long's speech was based upon the City's Code and Permit Application.

57.     Chief Gray's reference to the City ordinances was a reference to § 771.12 of the Code.

58.     Chief Gray's directive to Long to get a permit was a reference to the Permit Application.

**Long Attempts to Clarify the City's Enforcement of the Code and Permit Application**

59.     Long went personally to Chief Gray's office to speak with him about the matter. Long was sent to the office of the City's Clerk, whom he was told was responsible for issuing permits.

60.     At the City's Clerk's office, the City's Clerk, Clerk Clay, showed Long § 771.12, and told him that it applied to street preaching.

**Long's Attempt to Avoid Litigation**

61.     On August 11, 2022, Long's legal counsel sent a letter by electronic mail to the City's Clerk, Clerk Clay, informing him of Long's planned activity in the City, in an attempt to avoid litigation and reach an amicable resolution of the anticipated issues.

62.     On August 11, 2022, Clerk Clay responded that "[t]he Parade and Assembly Permit is used primarily to assist the applicant in marshaling resources and to inform Fire, Police, EMS and Public Works as to what, when and where should an emergency arise."

63.     On August 11, 2022, Long's counsel replied: "We are assuming from your response Mr. Long may return and engage in his activities without requesting a permit. If this is not correct, please let us know."

64.     On August 12, 2022, Clerk Clay responded: "Yes, unless the function is on a City of Princeton event venue, such as Copeland Town Square and City Park . . . ."

**The Code as Applied, and the Permit Application as Written and as Applied, Constitute an Unconstitutional Prior Restraint on Long's Protected Speech**

65.     The City's Code as applied, and the City's Permit Application, as written and as applied, operate as an unconstitutional prior restraint on Long's expression.

66.     As written, the Code applies to "[a]ll persons engaging in the business of conducting dances or furnishing other public amusement or entertainment conducted for private profit or gain."

67.     Long is not engaging in the business of conducting dances or furnishing other public amusement or entertainment.

68.     Long's expressive, religious activity is not conducted for private profit or gain.

69.     As written, the Code does not apply to Long's protected speech.

70.     Contrary to the terms written in the Code, Defendants Chief Gray and Clerk Clay have applied the Code to Long's protected speech, requiring him to obtain a permit before he may engage in protected speech.

71.     The Code requires a permit application to be made at least 24 hours in advance of Long's protected speech.

72.     The Code requires a permit to be obtained from the City Collector. A review of the City's website reveals that it is unclear who the City Collector is (if there is such a person).

73.     As applied, the Code constitutes an unconstitutional prior restraint on Long's protected speech.

74.     The Permit Application, as written, is inconsistent with the Code as written.

10

75.    The Permit Application applies to "picketing, public speech, debate, skit, demonstration, etc. (without defining the scope of 'etc.')." This activity is not covered by the Code as written.

76.    The Permit Application states that it must be received at least 10 business days prior to the scheduled event.

77.    The Permit Application does not mention the City Collector. It must be approved by the Chief of Police and the City Clerk, who are not mentioned in the Code.

78.    On August 12, 2022, Clerk Clay determined that Long could not, based upon the City's Code and Permit Application, express his message without first obtaining a permit.

79.    As written and as applied, the Permit Application constitutes a prior restraint on Long's protected speech.

**Long is Suffering an Irreparable, Immediate, and Lasting Impact on his Expression**

80.    As a direct and proximate result of Defendants' prior enforcement of the Code and Permit Application, Long is forfeiting his constitutionally protected activities due to fear of citation and fines.

81.    As a direct and proximate result of Defendants' enforcement of the Code and Permit Application, Long has been unconstitutionally denied the right to freedom of speech.

82.    As a direct and proximate result of Defendants' enforcement of the Code and Permit Application, Long has been unconstitutionally denied the right to the free exercise of his religion.

83.    As a direct and proximate result of the Code and Permit Application, Long has been unconstitutionally denied the right to due process.

84.    As a direct and proximate result of Defendants' enforcement of the Code and Permit Application, Long was publicly embarrassed and humiliated.

11

85.     Defendants' enforcement of the Code and Permit Application and the City's officers', agents', and employees' actions under color of state law, have deprived, and continue to deprive, Long of his constitutional rights.

86.     As a direct and proximate result of Defendants' enforcement of the Code and Permit Application, and the City's officers', agents', and employees' actions under color of state law, Long fears future citation and fines when exercising his constitutional rights.

87.     As a direct and proximate result of Defendants' enforcement of the Code and Permit Application, and the City's officers', agents', and employees' actions under color of state law, Long is uncertain and unsure of his freedom to engage in protected speech.

88.     The deprivation of Long's rights guaranteed by the United States Constitution has caused him to suffer harm.

89.     As interpreted and enforced by Defendants, the Code and Permit Application prohibit Long's manner of expressing his religious message.

90.     As interpreted and enforced by Defendants, Long is subject to the provisions of the Code and Permit Application.

91.     The threat of future citation and fines is both great and immediate.

92.     Based upon the prior enforcement actions, there is a credible threat that Long will be cited and fined in the future while attempting to exercise his constitutional rights within the City, including, but not limited to, at the same location where the Code and Permit Application were enforced against Long on June 26, 2022, and August 12, 2022, and in Dick Copeland Town Square and/or Princeton City Park.

93.     The future impingement of Long's rights is an absolute certainty unless and until this Court grants the declaratory and/or injunctive relief requested herein.

94.     Defendants have discouraged Long's constitutional rights to the point that Long fears exercising his constitutional rights.

95.     Long has specific and concrete intentions to share his religious message in public spaces in the City, including Dick Copeland Town Square and Princeton City Park, but he is fearful of being cited and fined for exercising his constitutional rights.

96.     The violations of Long's constitutional rights alleged herein have caused, and will continue to cause, Long to suffer extreme hardship, both actual and impending, irreparable injury, and damage.

97.     Long currently suffers from the denial of rights guaranteed by the United States Constitution because of Defendants' actions taken under color of law.

98.     There is a substantial likelihood that Long will prevail on the merits in this case because Defendants' enforcement of the Code and Permit Application and Defendants' actions under color of state law constitute an abridgement of Long's constitutional rights.

99.     The harm to Long outweighs any subjective harm to Defendants.

100.    The public interest is benefited when constitutional and civil rights are protected by the Courts.

101.    Defendants' enforcement of the Code and Permit Application under color of state law deprived Long of his right to freedom of speech, the free exercise of religion, and due process protected by the United States Constitution.

102.    Defendants acted without reasonable cause and without due care in causing the deprivation of Long's rights to freedom of speech, free exercise of religion, and due process protected by the United States Constitution.

103.    As a direct and proximate result of Defendants' actions and omissions under color of state law, Long suffered the loss of his freedom of speech and free exercise of religion protected by the United States Constitution.

104.    Defendants' actions and omissions were performed with malice, and/or oppression, and/or callous and/or deliberate indifference, and/or a conscious disregard of Long's rights to freedom of speech, free exercise of religion, and due process protected by the United States Constitution.

105.    Defendants' enforcement of the Code and Permit Application under color of state law are the moving force behind the violation of Long's rights to freedom of speech, free exercise of religion, and due process protected by the United States Constitution.

106.    Defendants' enforcement of the Code and Permit Application under color of state law operate to unconstitutionally limit, ban, and censor Long's rights to freedom of speech, free exercise of religion, and due process protected by the United States Constitution.

107.    Defendants had a duty at all times mentioned herein to implement and enforce policies and procedures to adequately supervise and adequately train themselves and their officers, agents, and employees so as to prevent the constitutional violations alleged herein.

108.    Defendants failed to implement and enforce policies and procedures to adequately supervise and adequately train themselves and their officers, agents, and employees so as to prevent the constitutional violations alleged herein.

109.    Defendants' actions and omissions regarding the failure to adequately train themselves and their officers, agents, and employees so as to prevent the constitutional violations alleged herein exhibit deliberate indifference toward Long's constitutional rights.

110.    Long has satisfied all conditions precedent to bringing this action.

14

111.    Long is entitled to recover reasonable attorneys' fees and costs from Defendants pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1920, and Rule 54 of the Federal Rules of Civil Procedure.

### AS AND FOR A FIRST CAUSE OF ACTION:

### THE CODE AND PERMIT APPLICATION AS APPLIED BY DEFENDANTS VIOLATE THE FREEDOM OF SPEECH CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION

112.    The averments of paragraphs 1-111 are repeated and alleged in full force and effect as if repeated in their entirety herein.

113.    The First Amendment to the United States Constitution, applied to the States through the Fourteenth Amendment, prohibits unconstitutionally abridging the freedom of speech.

114.    As promulgated, interpreted, and enforced by Defendants, the Code and Permit Application act as an unconstitutional prior restraint prohibiting Long's freedom of speech.

115.    Chief Gray's actions were performed under color of state law in that he claimed to be performing an official duty, but his acts were outside the limits of lawful authority and were abusive in manner, and he further acted in a way that misused his power and was able to do so only because of his position as a public official.

116.    Clerk Clay's actions were performed under color of state law in that he claimed to be performing an official duty, but his acts were outside the limits of lawful authority and were abusive in manner, and he further acted in a way that misused his power and was able to do so only because of his position as a public official.

117.    Defendants' actions were taken with malice and/or reckless indifference to Long's right to freedom of speech.

118.    The Code and Permit Application, as applied, unconstitutionally impose a burden on Long's and other individuals' constitutional rights because they:

a. allow for the exercise of unbridled discretion; and,

b. lack narrow tailoring, fail to achieve any legitimate government purpose, and fail to leave open alternative avenues for expression; and,

c. bar the free speech of Long and possibly other citizens in a traditional public forum.

119.    The Code and Permit Application as applied deny Long's right to freedom of speech and satisfy no rational, substantial, or compelling government interest in the least restrictive means possible.

120.    Defendants' enforcement, actions, policies, and practices are unconstitutionally overbroad and are not narrowly tailored to address the City's interests, thereby allowing Defendants' agents and employees to unconstitutionally restrict and prohibit Long's rights, and those of the general public, to engage in freedom of speech activities otherwise protected by the First Amendment.

121.    Long was deprived of his right under the First Amendment to engage in freedom of speech activities prohibited by the Code and Permit Application as applied.

122.    Long has been, and continues to be, deprived of his right under the First Amendment to engage in freedom of speech.

123.    Long has suffered injuries and damages as a result of Defendants' deprivation of his rights, including, but not limited to, mental and emotional distress, impairment of reputation, personal humiliation, and other tangible and intangible harms that would not exist but for

Defendants' actions and/or omissions, and these harms are reasonably certain to be experienced into the future.

WHEREFORE, Long respectfully requests that this Court grant the relief requested hereinafter in the Prayer for Relief, and any further relief this Court deems just under the circumstances.

### AS AND FOR A SECOND CAUSE OF ACTION:

### THE CODE AND PERMIT APPLICATION AS APPLIED BY DEFENDANTS VIOLATE THE FREE EXERCISE CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION

124.    The averments of paragraphs 1-111 are repeated and alleged in full force and effect as if repeated in their entirety herein.

125.    The First Amendment to the United States Constitution, applied to the States through the Fourteenth Amendment, prohibits unconstitutionally abridging the free exercise of religion.

126.    Long has a personal belief in the Biblical mandate to spread the Gospel of Jesus Christ and he engages in speech activities for the purpose of spreading the Gospel of Jesus Christ. These activities are prohibited by the Code and Permit Application, as interpreted and enforced by Defendants.

127.    The Bible instructs believers to share the Gospel of Jesus Christ with others, and Long relies on the Bible to guide his words and actions.

128.    As interpreted and enforced by Defendants, the Code and Permit Application act as an unconstitutional prior restraint prohibiting Long's free exercise of religion.

129.    Chief Gray's actions were performed under color of state law in that he claimed to be performing an official duty, but his acts were outside the limits of lawful authority and were

17

abusive in manner, and he further acted in a way that misused his power and was able to do so only because of his position as a public official.

130.    Clerk Clay's actions were performed under color of state law in that he claimed to be performing an official duty, but his acts were outside the limits of lawful authority and were abusive in manner, and he further acted in a way that misused his power and was able to do so only because of his position as a public official.

131.    Defendants' actions were done with malice and/or reckless indifference to Long's rights to the free exercise of religion.

132.    Defendants' enforcement requires Long to censor his religious speech and imposes a substantial burden on Long that is not imposed on other individuals.

133.    By forcing Long to choose between abandoning his religious beliefs in order to gain access to speech in the City's public spaces, and, alternatively, abiding by his religious beliefs only to be cited and fined, Defendants have imposed a substantial burden on Long's sincerely-held religious beliefs and the exercise of his religion.

134.    As applied, the Code and Permit Application unconstitutionally impose a burden on Long's and other individuals' constitutional rights because they:

a. allow for the exercise of unbridled discretion; and,

b. lack narrow tailoring, fail to achieve any legitimate government purpose, and fail to leave open alternative avenues for expression; and,

c. bar the free exercise of religion of Long and possibly other citizens in a traditional public forum.

135.    The Code and Permit Application as applied deny Long's right to the free exercise of religion and satisfy no rational, substantial, or compelling government interest in the least restrictive means possible.

136.    Defendants' enforcement, actions, policies, and practices are unconstitutionally overbroad and are not narrowly tailored to address the City's interests, thereby allowing Defendants' agents and employees to unconstitutionally restrict and prohibit Long's rights, and those of the general public, to engage in free exercise of religion activities otherwise protected by the First Amendment.

137.    Long was deprived of his right under the First Amendment to engage in free exercise of religion activities prohibited by the Code and Permit Application as applied.

138.    Long has been, and continues to be, deprived of his right under the First Amendment to engage in the free exercise of religion.

139.    Long has suffered injuries and damages as a result of Defendants' deprivation of his rights, including but not limited to mental and emotional distress, impairment of reputation, personal humiliation, and other tangible and intangible harms that would not exist but for Defendants' actions and/or omissions, and these harms are reasonably certain to be experienced into the future.

WHEREFORE, Long respectfully requests that this Court grant the relief requested hereinafter in the Prayer for Relief, and any further relief this Court deems just under the circumstances.

**AS AND FOR A THIRD CAUSE OF ACTION:**

**THE PERMIT APPLICATION AS WRITTEN**
**VIOLATES THE FREEDOM OF SPEECH CLAUSE OF**
**THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION**

140.    The averments of paragraphs 1-111 are repeated and alleged in full force and effect as if repeated in their entirety herein.

141.    The First Amendment to the United States Constitution, applied to the States through the Fourteenth Amendment, prohibits unconstitutionally abridging the freedom of speech.

142.    As written, the Permit Application acts as an unconstitutional prior restraint restricting Long's freedom of speech.

143.    As written, the Permit Application unconstitutionally requires an individual to obtain a permit from the City before engaging in constitutionally-protected speech in the City.

144.    As written, the Permit Application unconstitutionally requires an individual to apply for a permit no less than ten business days before engaging in constitutionally-protected speech in the City.

145.    As written, the Permit Application unconstitutionally requires the approval of designated City officials before an individual may engage in constitutionally-protected speech in the City.

146.    The Permit Application, as written, violates the free speech clause of the First Amendment in that it:

   a. lacks narrow tailoring, fails to achieve any legitimate government purpose, and fails to leave open alternative avenues for expression;

   b. bars the free speech of Long and possibly other citizens in traditional public fora;

   c. intimidates Long and possibly other citizens into censoring their own free speech;

d. fails to include narrow, objective, and definite standards to guide the City and its officials when deciding whether to grant or deny a permit;

e. allows for the exercise of unbridled discretion;

f. imposes a prior restraint on free speech for an unlimited period of time;

g. provides for no judicial review;

h. eliminates spontaneous free speech;

i. requires the divulgence of the applicant's identity; and

j. infringes on religious mandates.

147.    The Permit Application as written denies Long's right to freedom of speech and satisfies no rational, substantial, or compelling government interest in the least restrictive means possible.

148.    The Permit Application as written is not narrowly tailored to address the City's interests, thereby allowing Defendants' agents and employees to unconstitutionally restrict and prohibit Long's rights, and those of the general public, to engage in freedom of speech activities otherwise protected by the First Amendment.

149.    Long was deprived of his right under the First Amendment to engage in freedom of speech activities prohibited by the Permit Application as written.

150.    Long has been, and continues to be, deprived of his right under the First Amendment to engage in freedom of speech.

151.    Long has suffered injuries and damages as a result of the Permit Application's deprivation of his rights, including, but not limited to, mental and emotional distress, impairment of reputation, personal humiliation, and other tangible and intangible harms that would not exist

but for the written provisions of the Permit Application, and these harms are reasonably certain to be experienced into the future.

WHEREFORE, Long respectfully requests that this Court grant the relief requested hereinafter in the Prayer for Relief, and any further relief this Court deems just under the circumstances.

## AS AND FOR A FOURTH CAUSE OF ACTION:

## THE PERMIT APPLICATION AS WRITTEN VIOLATES THE FREE EXERCISE CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION

152.    The averments of paragraphs 1-111 are repeated and alleged in full force and effect as if repeated in their entirety herein.

153.    The First Amendment to the United States Constitution, applied to the States through the Fourteenth Amendment, prohibits unconstitutionally abridging the free exercise of religion.

154.    Long has a personal belief in the Biblical mandate to spread the Gospel of Jesus Christ and he engages in speech activities for the purpose of spreading the Gospel of Jesus Christ. These activities are prohibited by the Permit Application as written.

155.    The Bible instructs believers to share the Gospel of Jesus Christ with others, and Long relies on the Bible to guide his words and actions.

156.    As written, the Permit Application requires Long to censor his religious exercise and imposes a substantial burden on Long that is not imposed on other individuals.

157.    By forcing Long to choose between abandoning his religious beliefs in order to gain access to speech in the City's public spaces, and, alternatively, abiding by his religious beliefs only

to be cited and fined, the Permit Application as written has imposed a substantial burden on Long's sincerely-held religious beliefs and the exercise of his religion.

158.    As written, the Permit Application acts as an unconstitutional prior restraint prohibiting Long's free exercise of religion.

159.    As written, the Permit Application unconstitutionally requires an individual to obtain a permit from the City before engaging in constitutionally-protected speech in the City.

160.    As written, the Permit Application unconstitutionally requires an individual to apply for a permit no less than ten business days before engaging in constitutionally-protected speech in the City.

161.    As written, the Permit Application unconstitutionally requires the approval of designated City officials before an individual may engage in constitutionally-protected speech in the City.

162.    The Permit Application, as written, violates the free exercise clause of the First Amendment in that it:

a. lacks narrow tailoring, fails to achieve any legitimate government purpose, and fails to leave open alternative avenues for expression;

b. bars the free exercise of religion of Long and possibly other citizens in traditional public fora;

c. intimidates Long and possibly other citizens into censoring their own religious exercise;

d. fails to include narrow, objective, and definite standards to guide the City and its officials when deciding whether to grant or deny a permit;

e. allows for the exercise of unbridled discretion;

f. imposes a prior restraint on the exercise of religion for an unlimited period of time;

g. provides for no judicial review;

h. eliminates spontaneous religious exercise;

i. requires the divulgence of the applicant's identity; and

j. infringes on religious mandates.

163.    The Permit Application as written denies Long's right to the free exercise of religion and satisfies no rational, substantial, or compelling government interest in the least restrictive means possible.

164.    The Permit Application as written is not narrowly tailored to address the City's interests, thereby allowing Defendants' agents and employees to unconstitutionally restrict and prohibit Long's rights, and those of the general public, to engage in free exercise of religion activities otherwise protected by the First Amendment.

165.    Long was deprived of his right under the First Amendment to engage in free exercise of religion activities prohibited by the Permit Application as written.

166.    Long has been, and continues to be, deprived of his right under the First Amendment to engage in the free exercise of religion.

167.    Long has suffered injuries and damages as a result of the Permit Application's deprivation of his rights, including, but not limited to, mental and emotional distress, impairment of reputation, personal humiliation, and other tangible and intangible harms that would not exist but for the written provisions of the Permit Application, and these harms are reasonably certain to be experienced into the future.

WHEREFORE, Long respectfully requests that this Court grant the relief requested hereinafter in the Prayer for Relief, and any further relief this Court deems just under the circumstances.

**AS AND FOR A FIFTH CAUSE OF ACTION:**

**THE PERMIT APPLICATION AS WRITTEN VIOLATES**
**THE DUE PROCESS CLAUSE OF**
**THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION**

168.    The averments of paragraphs 1-111 are repeated and alleged in full force and effect as if repeated in their entirety herein.

169.    The Fourteenth Amendment to the United States Constitution prohibits unconstitutionally abridging the right to due process.

170.    The Permit Application as written unconstitutionally imposes a burden on Long's and other individuals' constitutional rights because it is unduly vague.

171.    The Permit Application as written unconstitutionally imposes a burden on Long's and other individuals' constitutional rights because it is unconstitutionally overbroad.

172.    The Permit Application as written unconstitutionally imposes a burden on Long's and other individuals' constitutional rights because it grants unbridled discretion.

173.    Long was deprived of his constitutional right to due process by the Permit Application.

174.    Long continues to be deprived of his right to due process.

175.    Long has suffered injuries and damages as a result of Defendants' deprivation of his right to due process, including but not limited to mental and emotional distress, impairment of reputation, personal humiliation, and other tangible and intangible harms that would not exist but

for Defendants' actions and/or omissions, and these harms are reasonably certain to be experienced into the future.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Long respectfully prays for judgment as follows:

1.      That this Court assume jurisdiction of this matter; and,

2.      That this Court issue a preliminary and permanent injunction restraining and enjoining Defendants, and all persons acting in concert or participating with Defendants, from enforcing and/or applying the City's Codified Ordinances, § 771.12, and the City's procedures for granting permits for expressive activity, as exemplified by the City's Permit Application, in the manner Defendants enforced, interpreted, and applied them against Long on June 26, 2022, and August 12, 2022, and thereafter; and,

3.      That this Court issue the requested injunctive relief without a condition of bond or other security; and,

4.      That this Court issue Declaratory Judgment under the Declaratory Judgment Act to determine Long's and Defendants' rights and duties regarding enforcement of the City's Codified Ordinances, § 771.12, and the City's procedures for granting permits for expressive activity, as exemplified by the City's Permit Application; and,

5.      That this Court enter a judgment and decree declaring that Defendants' enforcement, interpretation, and application of the City's Codified Ordinances, § 771.12, and the City's procedures for granting permits for expressive activity, as exemplified by the City's Permit Application, against Long on June 26, 2022, and August 12, 2022, violated Long's right to freedom of speech, the free exercise of religion, and the due process of law; and,

6.      That this Court adjudge, decree, and declare the rights and other legal relations with the subject matter here in controversy, in order that such declaration shall have the force and effect of final judgment; and,

7.      That this Court grant Long an award of nominal damages against Defendants; and,

8.      That this Court grant Long prejudgment and post-judgment interest; and,

9.      That this Court retain jurisdiction of this matter for the purpose of enforcing any Orders; and,

10.     That this Court award Long's costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1920, Rule 54 of the Federal Rules of Civil Procedure, or other applicable law; and,

11.     That this Court grant Long such other and further relief as may be just and proper.

Respectfully submitted this 30th day of March, 2023.

| /s/ David J. Markese | /s/ Paul W. Roop, II |
|---|---|
| David J. Markese, Esq.* | Paul W. Roop, II, Esq. |
| Florida Bar No. 0105041 | West Virginia Bar No.: 5406 |
| Frederick H. Nelson, Esq.* | Roop Law Office, LC |
| Florida Bar.: 0990523 | 115 Morning Star Lane |
| AMERICAN LIBERTIES INSTITUTE | Beckley, WV 25801 |
| P.O. Box 547503 | Telephone: (304) 255-7667 |
| Orlando, FL 32854-7503 | Email: info@rooplawoffice.com |
| Telephone: (407) 786-7007 | |
| Facsimile: (877) 786-3573 | Local Counsel for Plaintiff Franklin Long, Jr. |
| E-mail: dmarkese@ali-usa.org | |
| E-mail: rick@ali-usa.org | |
| | |
| Attorneys for Plaintiff Franklin Long, Jr. | |
| | |
| *Pending Admission *pro hac vice* | |

## VERIFICATION OF COMPLAINT

I, Franklin Long, Jr., a citizen of the United States and a resident of Tazewell County, Virginia, hereby declare under penalty of perjury that I have read the foregoing Verified Complaint and the factual allegations therein, and the facts as alleged therein are true and correct.

DATED: 1/22/2023

_____
FRANKLIN LONG, JR.